NASHVILLE BRIDGE COMPANY *et al. v.* MRS. BEULAH
TODD *et al.*

(*Nashville,* December Term, 1955.)

Opinion filed February 3, 1956.

TRABUE & STURDIVANT, and WILLIAM J. HARBISON, all of Nashville, for defendants-appellants.

ROBERT F. BRINKLEY, of Gallatin, and HUGH C. HOWSER, of Nashville, for complainants.

MR. JUSTICE SWEPSTON delivered the opinion of the Court.

This is a Workmen's Compensation case in which the Trial Judge has made an award to petitioner for the death of her husband, Burt Todd, from which the defendants have appealed.

Under well established rules, if there is any evidence to sustain the finding of the Trial Judge, the same is conclusive on this Court with respect to the facts.

■ The burden of proof rests upon petitioner to establish both that the death arose out of and in the course of the employment of the deceased. We have carefully read the record and are of opinion that petitioner has failed to offer any material evidence that the death arose out of the employment.

The cause of the death of the decedent is unknown, but it occurred under the following circumstances. Mr. Todd was 51 years old and had worked for many years as a farmer in Sumner County, Tennessee. He had come to Nashville and gone to work for the Nashville Bridge Company about a week before his death. His health was good so far as known by any one, his wife having testified that he had never complained of any heart trouble and he had been given a physical examination by the Nashville Bridge Company upon beginning his employment there and apparently was in good health.

■ His work was that of a scraper on the inside of the compartments of the river barges. These barges are divided up into several compartments with one manhole opening into each compartment and these holds are about 12 feet deep. Since there is but one hole in each compartment the company provided a 20-inch fan at each of these openings which fan forced air down into same so as to ventilate it. These barges are made of steel and the evidence shows, and it is a commonly known physical fact that the temperature inside the compartment on warm days especially, would be higher than the outside temperature. There were several men on this day, May 20, 1953, working in this same compartment with Mr. Todd. They were scraping the inside of the steel barge preparatory to painting same. The evidence shows that the outside temperature that day was 82 degrees but there is no showing what the inside temperature was.

Deceased worked from 7:00 o'clock in the morning until noon without any trouble. After he had eaten his lunch, which the witnesses testified he had brought along with him, and which consisted of some bologna sausage, he became sick about 2:30 or 3:00 p. m., and said that his stomach was cramping. His co-workers tried to get him to leave the hold and go to the hospital but he declined to do so and said he would be all right. They turned the fan on him and he remained in the hold until quitting time at 3:30 p. m., when he left the barge under his own power.

After the foreman had checked out at some indefinite time after 3:30 o'clock, he found Mr. Todd lying on the steps in a yard just off a street which was on his way to his son's home where he had been living. An ambulance was called and he was taken to the hospital but was dead upon arrival, and the death certificate shows cause of death unknown.

The fundamental basis of petitioner's claim to the right of recovery is that the working conditions were such as that Todd was working in a temperature well over 100 degrees and that since he was not accustomed to working under those conditions he became sick as a result of it, which brought about heat stroke, heat exhaustion or a heart attack of some kind.

His Honor, the Trial Judge rendered a very brief opinion which is as follows:

"To ease your mind I have marked off heat-stroke, sun-stroke, heat exhaustion. In my mind, whether or not the condition there caused this thrombosis, or thrombus, that is what was already there, nobody knew it was there, got in the blood stream, got in the heart and stopped it, got in the coronary artery or aorta.

"(Further argument by Mr. Harbison.)

"The Court: There must be some positive proof. You can't speculate. The law is—I must lean toward the injured person. I am afraid I am going to have to decide in favor of these people.

"Mr. Harbison: Would your Honor state upon what theory.

"The Court: I have already done so. I thought it was a coronary trouble, anything in the circulation. Anything that came from the heart is circulation.

"Mr. Harbison: Note exception."

The trouble with petitioner's theory and case is, however, that there is positively no evidence as to excessive heat. All that the proof shows is that outside temperature was 82 degrees on this day and that inside the hold it was some undetermined degree warmer and that a fan forced in fresh air, but there is no proof that Mr. Todd was too hot. In fact, the only witnesses who testified stated just the opposite. For example:—Ernest Woodward (r. 43) testified as follows:

"A. He said his stomach was hurting and I tried to get him to come out and get some air and we turned the fan on him. He didn't seem to be too hot. I was not hot myself. He didn't seem to be hot. I tried to get him to come out about 2:30 and he wouldn't come out. He said he thought he would be all right.

"Q. Did he say why he wouldn't? A. No, he wouldn't come out.

"Q. Did you put the fan on him just the same? A. Yes, sir."

The same witness testified (r. 52) as follows:

"Q. Did you ever know anybody getting too hot over there? A. No, sir.

"Q. You have had no heat strokes there since you have been there? A. No—not that I know of.

"Q. None that you know of? A. That is right.

"Q. Bert didn't complain of being dizzy or having a headache, did he? A. No, sir.

"Q. He didn't complain of being too hot? A. No, he said he was not too hot.

"Q. He said he was not too hot? A. Yes, sir.

"Q. You were not too hot? A. No, I was hotter even than he was, and I was not too hot.

"Q. You had worked all during the hot summer of 1952? A. Yes, sir.

"Q. You have been in there on hotter days than this? A. Yes, sir, I am telling you.

"Q. Before and since? A. That is right. It has been hotter than this day was. I have been in them holds when it was 108 in the shade.

"Q. You never knew of anybody to have a heat stroke? A. No, sir.

"Q. You just knew to come out of there if it got too hot? A. Yes, sir."

The only other witness testifying on the point was Harland Perry (r. 80) who testified as follows:

"Q. Mr. Perry, Mr. Todd never complained that he was too hot, did he? A. He didn't say whether he was too hot or what. He just said his stomach was bothering him.

"Q. His stomach was bothering him? A. Yes, sir.

"Q. He didn't complain of heat down there? A. No, sir.

"The Court:—He didn't know whether he was hot or not?

"By Mr. Harbison:—He didn't complain about the heat? A. He didn't say.

"Q. All of you were sweating some down there?

A. Yes, we were sweating some."

While there is evidence to the effect that one who was not accustomed to working in those holds when the heat is excessive, is likely to be affected by the excessive heat more so than men who have been accustomed to it for an appreciable length of time, the proof is wholly lacking that the heat conditions were excessive on this day.

■ It seems perfectly obvious then that the Company would not be responsible for the deceased becoming sick from some other cause than the heat where he was working. It is a fact too well known by everybody that a person may suddenly have a stomach up-set from something he has eaten or some temporary up-set or failure of a bodily function to operate that is not due to the external conditions at all.

The petitioner relies upon answers given by the two doctors who testified to hypothetical questions put to them by counsel for petitioner. These questions were in part predicated upon the theory of the excessive heat conditions in the hold and, therefore, in view of what we have said above, the answers given by the doctors become irrelevant.

Counsel for the defendants have dwelt forcibly on the proposition that the cause of death was wholly speculative. In view of what we have said above it is unnecessary to prolong this opinion by a discussion of that proposition.

It is our conclusion, therefore, that there is no evidence to sustain the finding of the Trial Judge and, therefore, the judgment below is reversed and the petition is dismissed.